

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NJM/VAZ
F. #2019R00980

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 20, 2025

<u>By ECF and E-mail</u>

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Nikolaj Sofinskij
             <u>Criminal Docket No. 19-456 (PKC)</u>

Dear Judge Chen:

      The government respectfully submits this letter in advance of defendant Nikolaj Sofinskij's sentencing, scheduled for February 25, 2025, at 10:00 a.m. As set forth below, the government recommends that this Court impose a sentence within the United States Sentencing Guidelines ("Guidelines") range of 30 to 37 months' imprisonment and issue an order of restitution in the amount of $20,000.

      A proposed restitution order is attached to this letter as Exhibit A, respectively. An attachment to the proposed restitution order and certain filings in connection with a proposed judicial removal order are filed as Exhibits B to D under seal as a separate entry.

I.    <u>Background</u>

      From 2013 to 2018, the defendant, who resided in Russia, and others operated reshipping schemes to defraud merchants, banks and individuals in the United States by stealing personally identifiable information ("PII") on the black market and using that unlawfully obtained PII to buy merchandise from U.S. retailers for resale abroad. In total, the reshipping schemes caused more than $48 million in losses to victims. (<u>See</u> PSR ¶ 10).

      Predominantly active in the scheme from 2014 to 2017, the defendant himself is connected to at least 285 separate shipments (which themselves included multiple items), and the Court has already entered a forfeiture order in connection with the defendant's case.

(See ECF No. 79.) Pursuant to his plea agreement, the defendant additionally has agreed to pay $20,000 in restitution to 14 identified victims. (See PSR ¶ 17; see also Ct. Ex. 1 ¶ 1).

The participants in these reshipping schemes communicated online through websites used to facilitate the schemes called "Admin Panels," and the three panels relevant to the defendant's sentencing are "Strongbox.cc," "Arenaproject.it," and "Astra Star Ave." (See PSR ¶ 8). All the participants in each scheme could communicate with some of their counterparts and could provide the conspiracy with the information it needed through the Admin Panels, which consisted of private messaging capabilities, logistics management tools, and databases in support of the schemes. (See id. ¶ 8).

Participants called "Stuffers" used stolen PII from victims—including their names, addresses, birthdates, social security numbers, and credit and debit card numbers—to buy merchandise such as smartphones, computers, luxury clothing, handbags, as well as other products, from online retailers. (See id. ¶ 5). Stuffers deceived retailers by having them ship merchandise to U.S. addresses, where the items would be reshipped by participants called "Drops" to participants called "Buyers" in Russia and countries in the Commonwealth of Independent States and Eastern Europe for resale. (See id. ¶¶ 6-8).

The defendant served as a Stuffer for the three above-described Admin Panels. (Id. ¶ 14). The defendant's primary online alias was "paganini." (Id. ¶ 13). Some of the items were reshipped directly to him and his first wife.

Scheme participants divided profits frequently through WebMoney, a virtual currency exchange based in Russia, and they reinvested proceeds into the ongoing schemes, including by buying prepaid mailing labels to facilitate shipments to Russia and elsewhere. (See id. ¶ 9).

On October 2, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with seven counts in connection with the three above-described Admin Panels: mail and wire fraud conspiracies in connection with the panels Strongbox.cc (Count Three), Arenaproject.it (Count Five), and Astra Star Ave (Count Eight), in violation of 18 U.S.C. § 1349; money laundering conspiracies in connection with the panels Strongbox.cc (Count Four), Arenaproject.it (Count Six), and Astra Star Ave (Count Nine), in violation of 18 U.S.C. § 1956(h); and aggravated identity theft in connection with the Astra Star Ave panel (Count Sixteen), in violation on 18 U.S.C. § 1028A. (See ECF No. 44).

At the request of U.S. law enforcement authorities, the defendant was arrested abroad on June 29, 2023, and extradited to the United States on October 11, 2023. The defendant was detained at his arraignment. On June 24, 2024, the defendant pleaded guilty to money laundering conspiracy in connection with the Astra Star Ave panel (Count Nine). The Court entered a forfeiture order as to the defendant on December 21, 2024. (See ECF No. 79).

II. <u>Guidelines Calculation</u>

Pursuant to the plea agreement, the parties stipulated that the following calculation under the United States Sentencing Guidelines ("Guidelines") applies:

| | | |
|---|---|---:|
| | Base Offense Level (§§ 2S1.1(a)(1), 2B1.1(a)(1)) | 7 |
| Plus: | Loss amount between $40,000 and $95,000 (§ 2B1.1(b)(1)(D)) | +6 |
| Plus: | Offense involved 10 or more victims (§ 2B1.1(b)(2)(A)(i)) | +2 |
| Plus: | Offense involved receiving stolen property and defendant was in business of receiving and selling stolen property (§ 2B1.1(b)(4)) | +2 |
| Plus: | Substantial part of scheme committed outside of United States and offense involved sophisticated means (§ 2B1.1(b)(10)(B), (C)) | +2 |
| Plus: | Offense involved possession or use of authentication feature, production and trafficking of unauthorized access device and the transfer or use of means of identification unlawfully to produce or obtain other means of identification (§ 2B1.1(b)(11)(A)(ii), (B)(i), (C)(i)) | +2 |
| Plus: | Conviction under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)) | +2 |
| Plus: | Offense involved sophisticated laundering (§ 2S1.1(b)(3)) | +2 |
| Less: | Zero-Point Offender (§ 4C1.1) | -2 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a), (b)) | <u>-3</u> |
| | Total: | <u>20</u> |

Under the agreed-upon Sentencing Guidelines, the total offense level is 20, which carries an advisory Guidelines range of 33 to 41 months' imprisonment, given that the defendant falls within Criminal History Category I.

However, the United States Probation Department ("Probation") recommends that the Court adopt an advisory Guidelines range of 24 to 30 months' imprisonment, based on a total offense level of 17. (<u>See</u> PSR ¶ 59; <u>see also id.</u> ¶¶ 21-30).

Probation's recommendation differs from the parties' stipulation on two grounds. As its first ground, Probation recommends that the Court apply a base offense level of 6, not 7, pursuant to U.S.S.G. §§ 2S1.1(a)(1) and 2B1.1(a)(2). The government agrees with Probation as to the base offense level and respectfully submits that the advisory Guidelines range should be 30 to 37 months' imprisonment.

3

Regarding its second ground, Probation recommends that the Court not apply the two-point sophisticated-laundering enhancement under U.S.S.G. § 2S1.1(b)(3). The government disagrees and respectfully submits that such an enhancement is appropriate as to all of the defendants charged in these reshipping schemes, because the schemes involved multinational transfers of funds, multiple intermediaries here and abroad, the use of sophisticated websites, and the use of a foreign virtual currency exchange to ensure anonymity in the laundering.

Moreover, contrary to Probation's recommendation (which was also made for defendant Aleksandr Popan, who has previously been sentenced), the Court expressly rejected Probation's recommendation and agreed with the government's application of the two-point enhancement during Popan's hearing.

III.    Analysis

  A.    Legal Standard

This Court "shall impose a sentence sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). "[I]n determining the particular sentence to be imposed," the Court "shall consider" certain factors set forth in § 3553(a), including the applicable Guidelines range. Id.

The Court must "correctly calculat[e] the applicable Guidelines range," because a miscalculation constitutes "significant procedural error." Gall v. United States, 552 U.S. 38, 49, 51 (2007). The Guidelines range "should be the starting point and the initial benchmark." Id. at 49. Still, the Court "should not presume" the reasonableness of the range and "must make an individualized assessment based on the facts presented." Id. at 50.

The Court also must "adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. at 51. A "significant departure or variance from the recommended Guidelines range 'should be supported by a more significant justification than a minor one.'" United States v. Martinez, 110 F.4th 160, 178 (2d Cir. 2024) (quoting United States v. Mumuni, 946 F.3d 97, 107 (2d Cir. 2019)).

The Court "must faithfully evaluate the record to ensure that the sentence imposed accurately and adequately reflects the seriousness of the offense conduct." Id. (quoting Mumuni, 946 F.3d at 106).

  B.    The Appropriate Sentence

The § 3553(a) factors counsel in favor of a Guidelines sentence. Such a sentence is sufficient but not greater than necessary to reflect the nature and circumstances of the offense and the history and characteristics of the defendant, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct.

4

The serious nature and circumstances of the cyber-fraud offense weigh in favor of a Guidelines sentence here. The sophisticated fraud required numerous participants here and abroad, and the defendant had a significant role in connecting various participants in a sophisticated black-market reshipping scheme.

Moreover, the PII of numerous victims was stolen in the course of the above-described reshipping schemes. There is an overriding interest in deterring the exploitation of victims' private information, as well as the business and goodwill of U.S. retailers. As an example, the defendant himself stole and exploited the identity of Fraud Victim #4 (as identified in the indictment) in December 2014, in connection with the fraudulent purchase of about 30 items that were shipped to a Drop's address in San Bernardino, California, and then reshipped to an address in Elizabeth, New Jersey, before being sent ultimately to Russia—all to further obscure the fraudulent source of the items.

Furthermore, the vast amounts of money stolen from international retailers to support the cybercriminals perpetrating the frauds from across the world were ultimately passed down to consumers, who are further victimized by the necessary anti-fraud measures that add friction to retail experiences in a futile effort to avoid frauds like those that the defendant facilitated as if it were his legitimate job.

Nothing about the defendant's circumstances differentiates him from the other criminal defendants appearing before this Court. The government disagrees that the conditions at MDC warrant any downward variance. The Court agreed during Popan's hearing that such variance would be unwarranted. Furthermore, the defendant does not cite any concrete medical or other issue he suffered while at the MDC.

Therefore, because of his involvement in hundreds of shipments in this scheme, and the importance of sending a message of deterrence in a multinational cyberfraud scheme such as this one, the Court should impose a Guidelines sentence, which is consistent with the § 3553(a) factors.

IV.     Conclusion

For the foregoing reasons, the government respectfully recommends that the Court impose a sentence within the Guidelines range of 30 to 37 months' imprisonment and issue an order of restitution in the amount of $20,000.

>                              Respectfully submitted,
>
>                              JOHN J. DURHAM
>                              United States Attorney
>
>      By:    /s/
>             Nicholas J. Moscow
>             Victor Zapana
>             Assistant U.S. Attorneys
>             (718) 254-7000

Enclosures (Filed Partially Under Seal)

cc:    Clerk of the Court (PKC) (by E-mail)
       Defense Counsel (by E-mail)
       Probation Office (by E-mail)